Ingraham, J.
By the evidence in this case it is established that the confessed judgment and the assignment were together one plan, whereby all the property of the assignors was to be disposed of. The assignor testified that on the morning that the assignment was executed he told Mr;Wallach that “I had to make an assignment owing to my *8 father’s death, and told him 1 wanted to protect these men (the persons in whose favor the judgments were confessed) and at his suggestion that was the mode in which it was done. Then the confessed judgments were made out first.” The instruction given by the assignor to his attorney was that he had to take an assignment and wished to protect certain of his creditors, and that to carry out that design the attorney suggested the plan of confessing judgments in favor of the persons that the assignor wished to “ protect,” and then making an assignment. The confession of judgments being the means adopted to accomplish a definite scheme or plan, it is clear that if the scheme which was attempted to be executed was prohibited by law, the means by which it was attempted to be carried out were illegal and void.
The total amount of the assigned estate was as follows : Property sold by the Sheriff, $13,749.83 ; amount collected by assignor, $23,000; making a total" of $36,749.33; one-' third of which amounted to $12,249.78.
The total amount of the judgments confessed by the assignor, and which were by the method adopted preferred, was $12,700.05.
By chapter 503, Laws of 1887, it is provided that in assignments of the estate of debtors for the benefit of creditors any preferences created therein shall not be valid except to the amount of one-third in value of the assigned estate left after deducting the wages of employes and the costs and expenses of executing such trusts.
This provision applies to all assignments for the benefit of creditors, and where such assignment contains preferences which are in excess of the one-third of the estate which the law allows to be preferred, it is provided that one-third of the assets only shall be applied to the payment of preferred claims.
But when the parties about io make an assignment attempt to evade this provision of law by means of confessed judgments, so that more than one-tliird of the debtor’s estate *9 'is actually paid to preferred creditors, the only way that •the law can be enforced is to declare the confessed judgments void and set them aside.
This is precisely the result of the scheme adopted by the •assignors in this case ; one-third of the gross amount of the assigned estate was $12,249.78, without deducting the •expense of executing the trust, and yet the assignor has by ■the confession of judgment preferred creditors to the amount ■of $12,700.05. This is of itself sufficient to declare the judgment confessed unlawful and void. The same principle has been applied in other States where preferences are prohibited by law. .
I do not think, however, that this would justify the ■court in setting aside the assignment. By holding the confession of judgment void and setting it aside, the whole property of the assignor would vest in the assignee, and ■could then be applied according to its provisions to the payment of the assignor’s debts, and if the assignee was a party to the fraud the court could appoint a substituted assignee to carry out the trusts.
It is, however, unnecessary to determine this question, as a consideration of the testimony has convinced me that the assignment was not a bona-fide transfer of the debtor’s property for the benefit of his creditors, but the scheme was devised by the assignor for the purpose of preventing the application of his property to the payment of his debts.
[The learned judge then reviewed the facts bearing on this question, arriving at the conclusion that the assignment was void for actual fraud.]
Plaintiff is, therefore, entitled to judgment setting aside the judgments entered on confession and the assignment as fraudulent and void, with costs.
Note on Creditor’s Suit on Attachment beeore Judgment.
The amendment to the provisions of the Code of Civil Procedure, made this year, go far to remedy the difficulty which *10 creditors have heretofore experienced in discovering assets of debtors who evade personal service of process, and against whom judgment cannot be obtained except by service by pub-, lication. In such case there can be no supplementary proceed- - ingson the judgment {Code Civ. Pro. § 2458), audit seems to be the prevailing opinion that a creditor’s suit cannot be maintained on such judgment, because it is deemed as not creating' an obligation by adjudication against the defendant, but only as binding property actually attached.
It was long since held that after a creditor has got attachment and caused the property of his debtor to be seized, he-can have the debtor’s safe deposit box opened (2 All. Neio' Pr. & F. 297, etc.), and have a third person ordered to appear and be examined as to funds of the debtor {Id. 308, etc.), and after the sheriff has seized the debtor’s books and papers, with the other property, the creditor has a right to examine the books and papers, by leave of court, so far as necessary to enable him to enforce the judgment (Brooke v. Foster, 30 All.
N. C. 200), and it has also been recently held that when an .attaching creditor has levied upon tangible property he can maintain an action to enjoin fraudulent transferees and creditors claiming under fraudulent judgments from disposing of or obtaining possession of the assets until the attaching creditor shall have had opportunity to established his claim by judgment. Tannenbaum v. Bosswog, 22 Id. 346.
But when the judgment recovered is founded simply on constructive service, the remedy of the creditor is embarrassed' by the rule that a judgment so obtained is not personally binding on the debtor.
The amendments to the Code, above mentioned, have for their object the maintaining of an action or suit for discovery,, or a suit in the nature of a creditor’s suit, as soon as an attachment has been levied. The amendments will best be understood by beginning with that of section 655, the section which in its previous form had provided that a sheriff having levied an attachment might maintain any action or special proceeding' in his own name, or that of the defendant, necessary for the collection of choses in action, or the reducing to possession of personal property attached. The amendment consists in adding a separate sub-division in the following words :
*11 “ 2. Where the summons was served without the State, or by publication, pursuant to an order obtained for that .purpose, as prescribed in chapter fifth of this act; and where the defendant has not appeared in the action (otherwise than specially) but has made default and before entering final judgment, the sheriff may in aid of said attachment, maintain an action against the attachment debtor, and any other person or persons, or against any other person or persons to compel the discovery of any thing in action, or other property belonging to the attachment debtor; and of any money, thing m action, or other property due to him, or held in trust for him, or to prevent the transfer thereof, or the payment or delivery thereof, to him or any other person, and the sheriff may, in aid of said attachment, also maintain any other action against the attachment debtor and any other person or persons, or against any other person or persons, which may now be maintained by a judgment creditor in a court of equity, either before the return of an execution in aid thereof, or after the return of an execution unsatisfied. The judgment in any of' the above mentioned actions must provide and direct that the said property shall he applied by the sheriff, to the satisfaction of any judgment which the plaintiff may obtain in the attachment action.”
Another amendment, by an insertion in section 677, allows the attaching plaintiff to bring any action in his own name and that of the sheriff jointly, which by the foregoing amendment the sheriff might bring ; and the amendment or addition to section 649, provides'that property thus discovered may be levied on by entering judgment in the action for discovery, and thereafter levying on the property as in other cases.
Several questions will doubtless receive careful consideration in settling the practice under this enlarged remedy.
First. Is the right to bring an action for such discovery limited to a case where order for publication has been had, and the defendant has made default, or is it allowable in a case of service by publication, and equally in any case of default ? A conservative construction would hold that these clauses are not separate, or alternative, but are to be read together as constituting the double condition, both branches of which must be satisfied.
*12 Second. The amendment seems to sanction an action, the sole object of which is discovery in aid of the attachment suit. It allows the sheriff to maintain an action to “compel a discovery," or to “ prevent a transfer," and also allows him to maintain “any other action" which may now be maintained by a judgment creditor either before or after the return of ■execution.
It is true that the last clause provides that the 'judgment in either class of actions must direct the property to be applied by the sheriff; yet this application is not made solely by way of execution of the judgment; but the amendment to ¡section 649 provides that it is to be made by entering the judgment, and the sheriff shall thereafter levy the attachment.
Third. The action (in one class of cases, or upon the conservative construction we have above mentioned, in both classes of cases) is contemplated as being brought “before judgment" in the attachment action. It is a settled rule, we believe, of the existing practice that an attachment cannot he .levied after judgment in the action in which it was issued. If this rule continues unqualified, the plaintiff, in case of a suit for discovery, must postpone judgment in his attachment suit until he has discovered what he desired to attach, and has ■entered judgment in the discovery suit; he may then levy the ¡attachment on th' discovered property, and he will then be free to enter judgment in his attachment suit, upon which he can sell the attached property.
It would seem to be a reasonable construction of the new statute to raise by implication an exception to the rule that attachment 'cannot be levied after judgment so as to allow the plaintiff to proceed in his attachment suit to judgment and .even execution against leviable assets without prejudice to his right, if necessary, in order to secure complete satisfaction, to go on with the sheriff’s suit for discovery, and if further property is discovered, levy the attachment, notwithstanding judgment in the attachment suit, or else to treat execution ■upon that judgment as equivalent for the pur-pose of selling the discovered assets. In other words, the phrase “ before judgment" in the statute, maybe construed as meaning “even 'before judgment,” that is to say, before judgment as well as ¡after judgment.
*13 Fourth. The most important questions, however, raised by these amendments relate to the substance of the proceeding.. The clause giving a sheriff power to maintain any action, against the attachment debtor and any other person, or against any other person, now maintainable by a judgment creditor, in equity, raises the question whether it is intended to make the-sheriff the primary plaintiff in all creditor’s actions on behalf of a creditor who has levied an attachment. In 1858 the-familiar statute was passed (the construction of which is-treated at length in a note on Fraudulent Preferences, in 33 Abb. IV. 0. 337), providing that executors, administrators,, receivers and other trustees, may treat as void acts done in-fraud of creditors ; and under this statute, as shown in the note just referred to, it has been uniformly held that the1 right of the judgment creditor is superseded so far as suit in his own name is concerned, and his power to secure a preference by diligence is taken away, and that, w-ith some exceptions not necessary to notice here, his only right to sue arises-where the executor, etc., fails in his duty; and even in that ease he must sue on behalf of the estate, and in effect for'timben efit of all creditors.
Tlie question may therefore arise in a case where there is both an attachment and a receivership or assignment for the benefit of creditors, what are the relative rights and duties of the sheriff, and of the receiver or assignee in respect to creditor’s suits. ' •
Again, under what conditions may the attaching creditor be allowed to bring the action, in lieu of leaving it to be-brought by the sheriff. This subject is treated, but in a very indefinite way, by the amendment to section 677, which in its previous form had provided that the plaintiff might, by leave of court or judge, maintain in his name and that of the sheriff" jointly, but by his own attorney and at his own expense, any actions which the previous sections authorized the sheriff to-bring, the sheriff being entitled, however, to receive and apply the proceeds, but not being liable for costs or expenses.. The clause interjected by the amendment—without expressly providing as to costs, control, and leave—seems to imply by connection that a plaintiff bringing a suit for recovery, or a* creditor’s suit under this new amendment, is subject to- the” *14 same conditions. The section as amended (the amendment being in italics) is as follows :
- “ § 677. The plaintiff, by leave of the court or judge, procured as prescribed in the next section, may bring and maintain, in the name of himself and the sheriff jointly, by bis own attorney and at his own expense, any action which by the provisions of this title, may be brought by the sheriff to recover property attached, or the value thereof, or a demand attached, or upon an undertaking given, as prescribed in this title, by a person other than the plaintiff; the plaintiff, in Ms own name and the sheriff’s jointly, may also bring and maintain any action which, by the provisions of subdivision two of section six hundred and fifty-five of article second of this title, may be brought by the sheriff. The sheriff must receive the proceeds of such an action, but he is not liable for the costs or expenses thereof. Costs may be awarded in such an action against the plaintiff in the warrant, but not against the sheriff."
The effect of the last clause of the amendment to section 655, which provides that “ The judgment in any of the above mentioned actions must provide and direct that the said property shall be applied by the sheriff to the satisfaction of any judgment which the plaintiff may obtain in the attachment action, is the key to the construction of all the parts of this amendment, for it shows that the object is to promote securing the priority which a diligent creditor by attachment seeks, and not as in the case of the Act of 1858 to promote equality among creditors.
By the pre-existing law, if an attaching creditor seeks to impeach a fraudulent transfer of assets, he cannot bring a creditor’s action either in his own name or that of the sheriff, or both. Bowe v. Arnold, 31 Hun, 256, and cases cited ; Throop Grain Gleaner Go. v. Smith, 110 N. Y. 83 ; rev’g 31 Hun, 91; but must first have a judgment before bringing a creditor’s action. Butin an action by the transferee against the sheriff for wrongfully seizing the goods under the attachment against the transferor, the sheriff may show that the assignment was fraudulent as against attaching creditors. Carr v. Van Hoesen, 26 Hun, 316.